UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TOMY LEE BYRD,

                    Petitioner,

v.                                    Case No. 3:06-cv-1115-J-33HTS

WALTER A. MCNEIL,[1]
et al.,

                    Respondents.

_____

## ORDER

### I. Status

Petitioner Tomy Lee Byrd, an inmate of the Florida penal system who is proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to 28 U.S.C. § 2254 on December 20, 2006. Petitioner challenges a 2001 state court (Duval County, Florida) judgment of conviction for petit theft and battery on a law enforcement officer on the following grounds: (1) ineffective assistance of trial counsel for failing to locate, depose and call two witnesses at trial: Albert J. Stephens and Robert Foster, both of whom could

---

[1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Walter A. McNeil is substituted for James R. McDonough as the proper party Respondent having custody over Petitioner.

have and would have testified that Petitioner did not commit a battery upon Officer Weeks; (2) ineffective assistance of trial counsel for failing to impeach Officer Weeks regarding evidence of prior disciplinary actions taken against him; (3) ineffective assistance of trial counsel for counsel's lack of experience, diligence, competence, preparation and skillfulness in that "the record is rife with examples of the trial court having to correct and basically guide Mr. Martin" throughout the trial; and (4) ineffective assistance of counsel for failing to object to the jury instructions, which contained verbiage not charged in the Information.

Respondents have responded. <u>See</u> Respondents' Answer to Petition for Writ of Habeas Corpus (Doc. #9) (hereinafter Response). In support of their contentions, they have submitted exhibits.[2] Petitioner was given admonitions and a time frame to respond. <u>See</u> Court's Order to Show Cause and Notice to Petitioner (Doc. #4). Petitioner has responded. <u>See</u> Petitioner's Reply to Respondents' Answer to Petition for Writ of Habeas Corpus (Doc. #16). This case is now ripe for review.

## II. Procedural History

On June 12, 2001, the State filed an Information, charging Petitioner Bryd with grand theft (count one), battery on a law enforcement officer (count two) and resisting an officer with

---

[2] The Court will hereinafter refer to Respondents' exhibits, attached to their Response, as "Ex."

violence (count three).  Ex. A at 15-16.  Petitioner's jury trial was held on October 29 and 30, 2001.  Ex. B and Ex. C, Transcript of the Jury Trial Proceedings (hereinafter Tr.).  The State abandoned count three.  Tr. at 28-29.  On October 30, 2001, with respect to count one, the jury found Petitioner guilty of the lesser offense of petit theft.  Ex. A at 58; Tr. at 220.  As to count two, the jury found Petitioner guilty of battery on a law enforcement officer, as charged.  Ex. A at 59; Tr. at 220.

On November 21, 2001, the trial court adjudicated Petitioner guilty and sentenced him.  Ex. A at 79-85, 97-132.  The court sentenced him to sixty (60) days of incarceration for the petit theft offense.  Id. at 82, 131.  With respect to the battery on a law enforcement officer offense, the court sentenced him as an habitual felony offender and a prison releasee reoffender to ten (10) years of imprisonment, with a five-year mandatory minimum, to be served consecutively to the sentence for petit theft.  Id. at 83-84, 131-132.

Petitioner appealed.  Id. at 92.  Before filing an initial brief, Petitioner, through counsel, on April 24, 2002, filed a motion to correct sentencing errors in the trial court pursuant to Fla. R. Crim. P. 3.800(b)(2).  Ex. D at 1-6.  He raised the following grounds: (1) the written judgment and sentence fails to specify that the minimum mandatory of five years is the prison releasee reoffender sentence, and (2) Petitioner should be

resentenced under the Criminal Punishment Code rather than the habitual felony offender statute.  <u>Id</u>.

On June 24, 2002, the trial court granted in part and denied in part the motion to correct sentencing errors.  <u>Id</u>. at 7-9.  The court granted ground one, stating that it was amending Petitioner's written judgment and sentencing order to reflect that he was sentenced to a ten-year prison term as an habitual felony offender and to a concurrent five-year prison term as a prison releasee reoffender.  <u>Id</u>. at 8, 59.  The court denied ground two.  <u>Id</u>. at 8.

Petitioner's direct appeal proceeded.  Petitioner raised two grounds: (1) the trial court erred by not granting his motion to correct sentencing errors in a timely manner, and (2) the trial court erred in denying ground two of the motion to correct sentencing errors.  Ex. E.  The State filed an Answer Brief.  Ex. F.  On March 21, 2003, the appellate court issued an opinion affirming in part and reversing in part.  <u>Bryd v. State</u>, 840 So.2d 436 (Fla. 1st DCA 2003) (per curiam); Ex. G.  Specifically, the appellate court stated:

> The defendant's ten-year sentence is reversed to the extent that [it] purports to enhance the statutory maximum for the crime of battery on a law enforcement officer under the Releasee Reoffender statute. The defendant's classification as a releasee reoffender resulted in the imposition of a five-year mandatory minimum, but it did not extend the five-year maximum that otherwise applies to a third degree felony. The outer limit of the sentence in this case was properly enhanced by

4

the trial court's concurrent classification of
the defendant as a habitual offender.

We recognize that the trial court
attempted to correct this error by granting
the defendant's motion under rule 3.800(b).
However, the order was not effective to modify
the original sentence, because it was rendered
after the expiration of the period in which
the trial court had jurisdiction. See Blake
v. State, 814 So.2d 1163, 1164 (Fla. 1st DCA
2002); Wilson v. State, 792 So.2d 601 (Fla.
4th DCA 2001); Kimbrough v. State, 766 So.2d
1255, 1256 (Fla. 5th DCA 2000). Therefore, we
must reverse and remand for resentencing.

On remand, the trial court shall make it
clear that the defendant was not sentenced to
ten years as a releasee reoffender, but rather
that he received a ten year sentence under the
habitual offender statute with a five year
mandatory minimum under the releasee
reoffender statute. The defendant need not be
present at resentencing. In all other respects
the sentence is affirmed.

Affirmed in part and reversed in part.

Byrd, 840 So.2d at 437.  The mandate was issued on April 8, 2003.

Ex. H.

On May 15, 2003, the trial court issued an order amending

Petitioner's judgment and sentence.  Ex. I.  The court stated that

it was amending Petitioner's written judgment and sentencing order,

as to count two, to reflect that he was sentenced to a ten-year

prison term as an habitual felony offender and to a concurrent

five-year prison term as a prison releasee reoffender.  Ex. I.  On

June 2, 2003, Petitioner's written judgment and sentencing order

was refiled and re-recorded pursuant to the court's May 15, 2003, order.  Ex. J.

On or about June 27, 2003, Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, raising the following grounds: (1) ineffective assistance of counsel for failing to locate, depose and call for trial potential exculpatory witnesses: Albert J. Stephens and Robert Foster; (2) ineffective assistance of counsel for failing to properly object and to preserve the issue of the trial court's failure to grant a continuance; (3) ineffective assistance of counsel for failing to properly present for trial impeachment evidence of disciplinary actions that were taken against Officer Weeks for tampering with evidence in other cases; (4) ineffective assistance of counsel for failing to present rehabilitative testimony concerning Petitioner's testimony; (5) ineffective assistance of counsel for lack of experience and lack of familiarity with Petitioner's case and the court's procedures; (6) ineffective assistance of counsel for failing to move for a judgment of acquittal on the charge of battery on a law enforcement officer.  Ex. K at 1-34.  Thereafter, Petitioner amended to add more claims: (7) ineffective assistance of counsel for failing to object and move for a mistrial where Petitioner was asked, on cross-examination, whether other witnesses whose version of events differed from Petitioner's were lying; (8) ineffective assistance of counsel for failing to object at trial

6

and for failing to request a limiting jury instruction on the use of Petitioner's prior conviction; and (9) ineffective assistance of counsel for failing to object to the trial court's error in instructing the jury that they could convict Petitioner if they found he intentionally caused bodily harm to the officer (where the Information only charged battery on a law enforcement officer by knowingly, unlawfully and intentionally touching or striking the officer). Id. at 35-80.

On February 10, 2005, the trial court conducted an evidentiary hearing. Ex. L, Transcript of the Evidentiary Hearing (hereinafter EH Tr.). Thereafter, on October 6, 2005, the court denied the motion for post conviction. Ex. K at 81-93.

Petitioner appealed. Id. at 94. On October 13, 2006, the appellate court per curiam affirmed without issuing a written opinion. Byrd v. State, 942 So.2d 885 (Fla. 1st DCA 2006); Ex. T. The appellate court denied Petitioner's motion for rehearing. Ex. U; Ex. V. The mandate was issued on December 7, 2006. Ex. W.

On July 12, 2004, Petitioner filed a motion to correct illegal sentence pursuant to Fla. R. Crim. P. 3.800(a). Ex. X. On May 18, 2006, the trial court summarily denied the Rule 3.800(a) motion. Ex. Y.

The Petition is timely filed within the one-year period of limitation. See 28 U.S.C. § 2244(d); Response at 5-6.

### III. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 127 S.Ct. 1933, 1940 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing. The pertinent facts of the case are fully developed in the record before the Court. Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999). Thus, the Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Therefore, an evidentiary hearing will not be conducted by this Court.

### IV.  Standard of Review

Since this action was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as

8

amended by AEDPA.  <u>Nelson v. Alabama</u>, 292 F.3d 1291, 1294-95 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 926 (2003); <u>Fugate v. Head</u>, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 535 U.S. 1104 (2002); <u>Wilcox v. Florida Dep't of Corr.</u>, 158 F.3d 1209, 1210 (11th Cir. 1998), <u>cert</u>. <u>denied</u>, 531 U.S. 840 (2000).  Under AEDPA, however, the review "is 'greatly circumscribed and highly deferential to the state courts.' <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11th Cir. 2002)." <u>Stewart v. Sec'y, Dep't of Corr.</u>, 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was:  "(1) . . . contrary to, or involved an unreasonable[3] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d); <u>Marquard</u>, 429 F.3d at 1303.   The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision.  <u>See</u> <u>Carey v. Musladin</u>, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146

---

[3] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."   <u>Schriro v. Landrigan</u>, 127 S.Ct. 1933, 1939 (2007) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000)).

L.Ed.2d 389 (2000)); <u>Osborne v. Terry</u>, 466 F.3d 1298, 1305 (11th Cir. 2006).

<u>Stewart</u>, 476 F.3d at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)." <u>Schriro</u>, 127 S.Ct. at 1939-40 (footnote omitted). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). <u>See</u> <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1227 (11th Cir. 2004), <u>cert</u>. <u>denied</u>, 545 U.S. 1142 (2005). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense

10

counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). The Eleventh Circuit recently captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>. at 687, 104 S.Ct. at 2064. Second, the defendant must show that counsel's deficient performance prejudiced him. <u>Id</u>. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694, 104 S.Ct. at 2068.

<u>Gaskin v. Sec'y, Dep't of Corr.</u>, 494 F.3d 997, 1002 (11th Cir. 2007). "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" <u>Van Poyck v. Florida Dep't of Corr.</u>, 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam) (citations and footnote omitted), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

The Eleventh Circuit recently stated:

> The Supreme Court has established certain principles and presumptions to guide our review of ineffectiveness claims under the flexible, case-specific standards of <u>Strickland</u>. We engage only in a "highly deferential" review of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Strickland</u>, 466 U.S. at 689, 104 S.Ct. at 2065 (quotation omitted). As a result of this presumption, a petitioner must show "that no competent counsel would have taken the action that his counsel did take." <u>Chandler v. United States</u>, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). Thus, "where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." <u>Id</u>. at 1314 n. 15 (quoting <u>Williams v. Head</u>, 185 F.3d 1223, 1228 (11th Cir. 1999)). Moreover, because the standard is an objective one, trial counsel's admission that his performance was deficient "matters little." <u>Id</u>. at 1315 n.16. We must also avoid "the distorting effects of hindsight" and evaluate the reasonableness of counsel's performance from the perspective of counsel at the time the acts or omissions were made. <u>Strickland</u>, 466 U.S. at 689, 104 S.Ct. at 2065.

<u>Jennings v. McDonough</u>, 490 F.3d 1230, 1243-44 (11th Cir. 2007).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims counsel was ineffective for failing to locate, depose and call two witnesses at trial: Albert Stephens and Robert Foster, both of whom could have and would have

12

testified that Petitioner did not commit a battery upon Officer Weeks.  At the trial, the State presented testimony from two witnesses, a Wal-Mart security officer and a police officer, that after stealing items from Wal-Mart, Petitioner fled to a waiting car in the store parking lot occupied by two individuals sitting in the front seat (Albert Stephens and Robert Foster) and yelled for the driver to start the car and go.  Tr. at 33-40, 82-83, 95-99. Petitioner jumped in the back seat of the car.  Id. at 40, 98-99. However, before the car could leave, the police officer pulled his gun, and the two front seat occupants put up their hands.  Id. at 82-83, 99-100.  When Petitioner attempted to get out of the car, the police officer reached his hands into the back seat to detain him, and Petitioner resisted and kicked the officer several times. Id. at 39-40, 65, 101-02, 111-12.  Both the Wal-Mart security officer and the police officer testified that Petitioner kicked the police officer.  Id. at 40, 101-02, 111-12.  After Petitioner was arrested and Mirandized, an investigating officer asked him why he had resisted the police officer while in the car.  Id. at 127. Petitioner replied that he did not want to go to jail.  Id.

Petitioner testified at the trial.  Id. at 147-68.  He admitted that he had four felony convictions and four convictions for crimes involving dishonesty.  Id. at 148, 166.  Petitioner admitted that he stole the items from Wal-Mart, that he ran to the waiting car in the parking lot and that he tried to get away from

the police officer. Id. at 151-53, 156-60, 167. Petitioner testified that the car was parked all the way at the end of the parking lot as a strategy for a clear getaway. Id. at 157. Petitioner, however, denied intentionally kicking the police officer. Id. at 167.

Thus, the two individuals that Petitioner claims his counsel was ineffective for failing to locate, depose and call were the two individuals who were in the getaway car in the Wal-Mart parking lot. Ex. A at 2-3; Tr. at 122-23, 136; Ex. K at 3. At the trial, the prosecutor stated that neither party had been able to locate the two individuals. Tr. at 123.

Petitioner raised this claim in his Rule 3.850 motion, and an evidentiary hearing was conducted, at which both Petitioner Byrd and defense counsel (Craig Martin) testified. After the evidentiary hearing, the judge, in a written order, extensively explained his credibility determination. The judge quite explicitly found Petitioner's testimony, at the evidentiary hearing, to be not credible and Mr. Martin's to be credible. He stated in pertinent part:

> The Court, as finder of fact, finds the defendant not to be a credible witness. The motion itself makes claims under oath which are conclusively rebutted by the objective record herein. The defendant's entire claim in Ground VI is a falsehood. The defendant was present in court when his attorney made two motions for judgment of acquittal, and yet he swears under oath in the motion that his counsel did not move for a judgment of

acquittal. (See, Ground VI of the motion and Exhibit "A").

The defendant's testimony about two witnesses who were not called to testify is contradicted by the testimony of his own mother. Additionally, he contradicts the sworn claims he made in his motion and his own testimony during the evidentiary hearing, when testifying about this issue.

As the convictions which are the subject of this motion were final on April 8, 2003, the defendant is now a person who has been convicted five times of felonies and five times of misdemeanor crimes of dishonesty.

The defendant obviously has a fanatical interest in the outcome of this case.

The defendant was not responsive to the attorney's questions when on the witness stand. His demeanor was evasive and argumentative, and he would respond to questions with answers such as "That's not what my records show." [sic] in lieu of actually answering the question.

Craig Martin, the defendant's attorney at trial, is a member of the Florida Bar, and as such has every reason to practice candor before a tribunal. His testimony seemed honest and straightforward, and he was frank and open in his answers. He was quick to admit he did not remember when he had no actual recollection of the answer. (His file was unavailable, as his former law firm has ceased to exist.) Mr. Martin appears to have no interest in the outcome of this hearing. On the contrary, he has every interest in maintaining a reputation in the court system as an honest and reliable attorney. Further, Mr. Martin's testimony agrees with the record herein whereas the defendant's testimony is contradicted by the objective record.

Accordingly, in all areas in which the defendant's testimony conflicts with that of

> Mr. Martin, the Court finds Mr. Martin to be
> credible and the defendant to be unworthy of
> belief.

Ex. K at 90-91.

In denying this claim, the postconviction court adjudicated

the claim on the merits, stating in pertinent part:

> In Ground I, the defendant complains that
> trial counsel was ineffective for failing to
> locate, depose, and call for trial two
> witnesses, Albert J. Stephens and Robert
> Foster. The defendant's testimony at the
> evidentiary hearing was contradictory as to
> this issue. He first stated "Mr. Martin was
> aware of these two witnesses, they were
> available and willing to testify. And Mr.
> Martin failed to depose or call these
> witnesses." (T. of Evid. Hrg. Pg. 7, Line 20).
> The defendant later testified "Mr. Martin was
> aware that I intended to call these witnesses
> for trial, but yet he never once even tried to
> contact these witnesses. . ." (T. of Evid.
> Hrg. Pg. 8, Line 9).

> The defendant then proceeded to testify
> that Mr. Martin did in fact try to locate
> these witnesses.

> > "The Defendant: . . . He said he
> > went out once but he never tried
> > again to contact these witnesses.

> > The Court:  He said he went out to
> > try to find them?

> > The Defendant: He said he went out,
> > he informed me he went out one time
> > to try to contact them and they
> > wasn't home and he never went out
> > again after that." (T. of Evid. Hrg.
> > Pg. 8, Line 11).

> The defendant's mother, Margaret Byrd,
> testified at the evidentiary hearing. In her
> testimony, she refuted the defendant's claim

that his counsel failed to attempt to locate these witnesses. "As a matter of fact, Brett and Mr. Martin had been by my house one night where they said they had come from is looking for two witnesses but that they couldn't find them. And that they would make another attempt to find the witnesses but I didn't hear anymore about the witnesses." (T. of Evid. Hrg. Pg 74, Lines 18-23). (The defendant was represented at trial by Craig Martin and his law partner, Brett Kocijan).

The defendant further admitted in his testimony that his counsel only had three days to prepare for trial. His family retained Mr. Martin after a lengthy period of representation by the Public Defender's Office.

> "The Defendant: . . . Mr. Martin only had three days to prepare for trial. He received discovery, I did have dates lined out, I think I've got it right here, wait a second. Mr. Martin received discovery on October 22nd.
>
> The Court: 2001?
>
> The Defendant: Let me get this right, excuse me. Mr. Martin received discovery on October 18th 2001. Judge Arnold set [the] date for trial October 22nd, 2001, which only gave Mr. Martin actually four days to prepare for trial but we did come right back to court again on the 19th just to confirm that I was going to be - Mr. Martin had been retained. So Mr. Martin only had from the 19th to the 22nd to prepare for trial cause he didn't get discovery until the 18th." (T. of Evid. Hrg. Pg. 8, Line 21 - Pg. 9, Line 10).

The defendant also admits in his testimony that his counsel filed a Motion for

17

Continuance, and it was denied by the trial court. "In this case trial counsel had only three days to prepare for trial.  Counsel sought a continuance early on and before we got ready to go to trial Mr. Martin did ask for a continuance and Judge Arnold denied [it]." (T. of Evid. Hrg. Pg. 10, Lines 21-24).

As to Ground I, the allegations of the motion are refuted by the defendant's own testimony, by that of his mother, and by his admission that his counsel, having been retained on the eve of trial, moved for a continuance and that motion was denied. The denial of the Motion for Continuance was cognizable on direct appeal.

The Court finds as a matter of fact that defense counsel at trial was retained on the eve of trial, made efforts to locate the witnesses complained of in Ground I, and moved for a continuance when he was unable to be prepared for trial.  All that defense counsel can do is file the Motion for Continuance. If the trial court denies it, that becomes a matter for the appellate courts.  Ineffective assistance is not demonstrated by the facts presented here.  As to Ground I, the motion is without merit.

Ex. K at 81-83.

As previously noted, the appellate court per curiam affirmed. Accordingly, this ground was rejected on the merits by the state trial and appellate courts.  Thus, there are qualifying state court decisions.  This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state

courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ground to be without merit.  After the evidentiary hearing, the state court resolved the credibility issue in favor of believing Mr. Martin's testimony over that of Petitioner Bryd.  The Court notes that credibility determinations are questions of fact.  See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations).  Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence.  See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Given the trial court's credibility determination, it is clear that Petitioner's claim is wholly unsupported and therefore, the claim must fail.

Further, in evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy

measure of deference to counsel's judgments.'"  <u>Rompilla v. Beard</u>,
545 U.S. 374, 381 (2005) (citations omitted).   Thus, Petitioner
must establish that no competent attorney would have taken the
action that counsel, here, chose.  <u>United States v. Freixas</u>, 332
F.3d 1314, 1319-20 (11th Cir. 2003).   As previously noted, the
prosecutor, at the trial, stated that neither party had been able
to locate the two individuals.   Tr. at 123.

   Even  assuming  *arguendo*  that  counsel's  performance was
deficient, Petitioner has not shown prejudice.   Petitioner's was
found guilty of battery on a law enforcement officer.   Even if
these two individuals had been located and had testified that
Petitioner did not intentionally kick the police officer, there is
not a reasonable probability that the outcome of the trial would
have been different.   There is not a reasonable probability that
the jury would have believed the testimony of Petitioner and the
occupants of the getaway car over the State's evidence.

## B. Ground Two

   As ground two, Petitioner claims counsel was ineffective for
failing to impeach Officer Weeks regarding evidence of prior
disciplinary actions taken against him.   Petitioner raised this
claim in his Rule 3.850 motion, and an evidentiary hearing was
conducted, at which both Petitioner Byrd and Mr. Martin (defense
counsel) testified.   As previously noted, the judge explicitly
found Petitioner's testimony, at the evidentiary hearing, to be <u>not</u>

credible and Mr. Martin's to be credible.  In denying this claim,

the postconviction court adjudicated the claim on the merits,

stating in pertinent part:

> In Ground III, the defendant complains that trial counsel was ineffective for failing to impeach Officer Weeks with evidence of prior disciplinary actions against him. Craig Martin, the defense counsel at trial, testified at the evidentiary hearing. He testified as follows:
>
>> "Q   Well did you make any efforts to determine if there was any impeachment evidence you could use against this officer.
>>
>> A   I believe we did. Mr. Brett Kocijan who was also trying the case with me looked into the backgrounds of all the officers that were involved.
>>
>> Q   Okay, do you remember finding anything?
>>
>> A   Against the officer that was battered?
>>
>> Q   Yes, sir.
>>
>> A   I don't believe so. I know there was something - - there was some indication of disciplinary action against one of the officers but to the best of my recollection I thought it was against the reporting officer and not the victim officer but I'm not a hundred percent sure on that.
>>
>> Q   Okay. Without respect to who that disciplinary record was against, did you make an

attempt to try and get those
introduced in trial.

A     Yes, we did. We actually had a
hearing in chambers with Judge
Day at that point and Judge Day
had heard the arguments and
ruled that he was not going to
let it in.

Q     And what was his reason for
doing that, do you remember?

A     He didn't feel it had any
relevance.

Q     And was that before the first
trial or before the second
trial?

A     That was the first trial.

Q     Okay and was there an attempt
made during the second trial to
introduce that evidence?

A     No, there was not.

Q     And why was that?

A     Well, my feeling was that Judge
Day had already made that
ruling, and that in an effort
to try to introduce the same
evidence in front of a
different judge might not sit
well with Judge Arnold and
might only put us in an awkward
position with that judge." (T.
of Evid. Hrg. Pg. 51, Line 16 -
Pg. 53, Line 1).

The parties stipulated during the
evidentiary hearing that Judge Day presided
over the first attempt to try this case
because Judge Arnold had too many trials.
Judge Day declared a mistrial, and the
following week Judge Arnold commenced the

second attempt to try the case, and that trial reached a verdict.

The Court finds that defense counsel attempted to impeach the officers with prior disciplinary actions and the judge ruled *in limine* that the evidence could not come into the trial. That ruling became the law of the case, and when the trial recommenced a week later, defense counsel's belief that it was the law of the case and that he was still bound by it was correct. The exclusion of that testimony by an order *in limine* was cognizable on direct appeal. Defense counsel's representation was not ineffective on this issue. As to Ground III, the motion is without merit.

Ex. K at 84-85.

As previously noted, the appellate court per curiam affirmed. Thus, this ground was rejected on the merits by the state trial and appellate courts. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## C. Ground Three

As ground three, Petitioner claims that counsel was ineffective for his lack of experience, diligence, competence, preparation and skillfulness in that "the record is rife with examples of the trial court having to correct and basically guide Mr. Martin" throughout the trial. Petitioner raised this ground in his Rule 3.850 motion, as ground five, and claimed that "trial counsel was incompetent to handle his case as evidenced by grounds one, two, three and four of the present motion." The postconviction court denied those grounds on the merits. Ex. K at 81-86.

Petitioner attempted, at the evidentiary hearing, to admit several Florida Bar complaints against Mr. Martin. EH Tr. at 19-20. The court inquired as to whether any of the complaints pertained to this particular case, and Petitioner conceded that those complaints did not relate to this case. Id. at 21. Therefore, the court, after fully explaining his reasoning on the record, sustained the State's objection, stating:

> [W]e will not admit the Florida Bar
> disciplinary reports about Mr. Martin. Had
> you filed a grievance against him and the
> reports that you were offering dealt with this
> case, it might not be still admissible because
> they're [sic] findings aren't necessary to my
> findings, but it would not be violating that
> part of the rule anyway because it would at
> least apply to this particular case, but I
> have to sustain the State's objection on
> those.

24

<u>Id</u>. at 24-25.

Thus, after the evidentiary hearing, the court adjudicated the ineffectiveness claim on the merits, stating in pertinent part:

> In Ground V, the defendant complains that trial counsel's lack of experience constituted *per se* ineffective assistance of counsel. Mr. Martin testified that at the hearing in which Judge Arnold denied his motion to continue the trial, the judge offered Mr. Byrd the opportunity to discharge Mr. Martin and return to being represented by the public defender, who had been on the case for five months before the defendant's family retained Mr. Martin. The defendant declined to go back to being represented by the public defender, and opted to continue being represented by Mr. Martin. (T. of Evid. Hrg. Pg. 50, Lines 9-12).
>
> Mr. Martin also testified that after the first trial (which resulted in a mistrial) he told Mr. Byrd that it had been his first trial as lead counsel, and that during the ensuing conversation, he said he would withdraw if the defendant wanted to go back with the public defender for the new trial which was coming up. Mr. Martin also offered to seek a continuance if Mr. Byrd wanted to try to seek new counsel other than the public defender.
>
> "Q    Now, Mr. Martin, I need to ask you about your experience with the criminal bar before this. Was this your first solo trial?
>
> A    The first trial with Judge Day was my first trial as lead counsel, but I wasn't solo, Brad Kocijan was trying it.
>
> Q    But it was your first first chair trial?
>
> A    Right, yes.
>
> Q    Now at any point during the trial did [sic] or before the trial did you tell Mr. Byrd that was the case?

A     Before the trial? I remember after the trial we had spoken and I had mentioned it to him, you know, just in passing. An[d] he seemed a little bit surprised by that an[d] we did have a conversation about that. And I recall that we had a discussion with him where he said – – where we said that if he felt uncomfortable proceeding forward, we had a mistrial, and there was a new trial that was coming up, and if he wanted to go back with the Public Defender we would understand.  If he wanted to move for continuance to try to seek new counsel we could certainly put that before the judge.

Q     And what did Mr. Byrd have to say about that?

A     I believe he was comfortable with going forward with us.

Q     So you don't remember Mr. Byrd expressing a need to get a new lawyer essentially?

A     No." (T. of Evid. Hrg. Pg. 55, Line 25 – Pg. 56, Line 25).

Ground V of the motion is without merit.

Ex. K at 86-88.

Essentially, Petitioner based this ineffectiveness claim upon the allegations contained within grounds one, two, three and four in his Rule 3.850 motion.  As previously noted, the state court denied ground one (ineffectiveness for failure to call two witnesses) and ground three (ineffectiveness for failure to impeach Officer Weeks with prior disciplinary actions).  See Sections A. and B., Grounds One and Two.  Further, the state court denied grounds two and four, stating in pertinent part:

In Ground II, the defendant complains that trial counsel was ineffective for failure to object and preserve the trial court's denial of his Motion for Continuance. There is no requirement that counsel object to the denial of a Motion for Continuance. This issue is preserved for appeal by the filing of the written Motion for Continuance. Defense counsel did all he could do by filing and arguing the Motion for Continuance. The issue raised in Ground II is without merit.

. . . .

In Ground IV, the defendant complains that trial counsel was ineffective for failure to rehabilitate the defendant's testimony that he was previously convicted of four felonies and four misdemeanor crimes of dishonesty by eliciting testimony that he had pled guilty on two of the felonies and all four of the misdemeanors. The defendant alleges that, had his counsel attempted to do this during direct examination, the jury would have found that the defendant's testimony was credible because he pled guilty when he was guilty and only went to trial when he was not guilty. Neither the motion nor the defendant's testimony on this issue accounted for what happened on the two felony cases in which the defendant did not plead guilty, or whether his testimony about pleading guilty would have opened the door to the prosecution presenting evidence of the details of the other two felonies.

That notwithstanding, Mr. Martin testified on this issue at the evidentiary hearing:

"Q   Okay. So did you have any opinion as to whether you were going to belabor the point as to his record versus just moving on and trying to get past it or did that cross your mind?

A     Well, yeah, I think that's
pretty much it, if you want to
make the defendant's record a
focal point of an argument, I
think - - I would think that
given the nature of some of the
offenses it would only - - I
don't know, it would seem to
only enhance the State's case
in my opinion." (T. of Evid.
Hrg. Pg. 55, Lines 14-22).

The Court finds that Mr. Martin's
decision not in inquire into any details of
these convictions was a valid and competent
tactical decision. No competent defense
counsel wants the jury to spend any more time
than necessary dwelling on the defendant's
prior criminal history, and in this particular
instance, the defendant's own motion admits
that in this case, he had prior felony
convictions that did not result from a guilty
plea, so the impact of his having pled guilty
is greatly reduced, and much damage is done to
the defendant's credibility. As to Ground IV,
the motion is without merit.

Ex. K. at 84, 85-86.

As previously noted, the appellate court per curiam affirmed.

Thus, the above-cited ineffectiveness claims were rejected on the

merits by the state trial and appellate courts.  This ground should

be addressed applying the deferential standard for federal court

review of state court adjudications, as required by AEDPA.  Upon a

thorough review of the record and the applicable law, it is clear

that Petitioner is not entitled to relief on the basis of this

claim because the state courts' adjudications of the claim were not

contrary to clearly established federal law, did not involve an

unreasonable application of clearly established federal law, and

were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### D. Ground Four

As ground four, Petitioner claims counsel was ineffective for failing to object to the jury instructions, which contained verbiage not charged in the Information.  The Information charged Petitioner, in count two (battery on a law enforcement officer) as follows:

> And for the second count of this information, your informant further charges that TOMY LEE BYRD on the 20th day of May, 2001, in the County of Duval and the State of Florida, knowingly committed a battery upon a law enforcement officer, to-wit: Joel Weeks, engaged in the lawful performance of his duty, by actually and intentionally touching or striking Joel Weeks against his will, contrary to the provisions of Sections 784.03 and 784.07, Florida Statutes.

Ex. A at 15, Information, filed June 12, 2001.  Petitioner challenges the following emphasized portion of the jury instructions given at the trial without defense objection.

> Now before you can find the defendant guilty of battery on [a] law enforcement officer the State must prove the following four elements beyond a reasonable doubt, one, Tommy Lee Byrd intentionally touched or struck Joel Weeks against his will **or caused bodily harm to Joel Weeks**, two, Joel Weeks was [a] law enforcement officer, three, Tommy Lee Byrd knew Joel Weeks was a law enforcement officer and four, Joel Weeks was engaged in the lawful performance of his duties when the battery was committed.

Tr. at 198 (emphasis added).

Petitioner raised this claim, as ground nine, in his second
supplement to his Rule 3.850 motion.  After an evidentiary hearing,
the postconviction court, in denying the claim, adjudicated the
claim on the merits, stating in pertinent part:

> In Ground IX, raised in the defendant's
> second supplement to the motion, the defendant
> complains of ineffective assistance of counsel
> for failing to object to jury instructions
> which authorize the jury to convict if the
> State proved that the defendant "intentionally
> touched or struck the officer against his will
> or caused bodily harm to the officer." The
> defendant claims that the Information charged
> him with Battery on a Law Enforcement Officer
> by knowingly, unlawfully and intentionally
> touching or striking the officer, which should
> have precluded the option of convicting on the
> basis that the defendant intentionally caused
> bodily harm to the officer.
>
> The defendant cites *Vager v. State,* Fla.
> L. Wkly. No. 39, pg. 2098C, 2d DCA, Sept. 17,
> 2004,[4] to support his contention that where
> only one form of Battery on a Law Enforcement
> Officer is charged in the Information, the

---

[4] <u>Vega v. State</u>, 900 So.2d 572 (Fla. 2nd DCA 2004) (finding
that it was fundamental error to instruct the jury on an uncharged
theory of the offense of battery on a law enforcement officer where
the verdict was a general verdict; stating the "error is
fundamental because the jury returned a general verdict of guilt
without specifying the basis for the conviction, making it
impossible to know whether Vega was convicted of the form of
battery with which he was charged rather than the form with which
he was not charged"), disapproved in part by <u>State v. Weaver</u>, 957
So.2d 586, 589 (Fla. 2007) ("Because bodily harm was never at issue
in Weaver's case, and the State never argued or presented evidence
of bodily harm, the trial court's inclusion of the bodily harm
element in the jury instructions did not rise to the level of
fundamental error."; reasoning that where there was neither
evidence of nor argument on the uncharged theory of the offense, it
was not impossible to know whether the defendant was convicted of
the charged theory of the offense or the uncharged theory).

jury may not base a conviction on, or be instructed on, the alternative form of committing this offense.[5]

First, the Court finds that the record herein shows that there was sufficient proof for the State to argue either theory. Therefore, absent the holding of *Vader,* there was no impropriety in arguing alternative theories, or in giving instructions which allowed the jury to examine alternative theories and convict on either one. Regarding the *Vader* case, this trial took place in October 2001. The *Vader* case was decided in September 2004. In order to demonstrate the level of competency sufficient to overcome allegations of ineffective assistance of counsel, it is not necessary that defense lawyers anticipate changes in the law, nor is it necessary for defense counsel to predict decisions which may be handed down in the future. Defense counsel is competent if he acts upon the law as it exists at the time of the trial, and has no duty to predict the future. *Muhammad v. State,* 426 So.2d 533, 538 (Fla. 1982, rehearing denied 1983). The *Muhammad* case was specifically ruling on a Motion for Post Conviction Relief.

Therefore, the case cited by the defendant does not apply to his counsel's conduct in this trial, and the alternative jury instructions were appropriate, based upon the law at the time of the trial and the evidence presented during the trial. Accordingly, Ground IX is without merit.

Ex. K at 89-90.

As noted by the postconviction court, counsel cannot be faulted for not knowing about the <u>Vega</u> case since it was decided in 2004, long after Petitioner's trial on October 29-30, 2001.

---

[5] EH Tr. at 37.

However, as noted by Petitioner, another case held that it was error for the trial court to instruct the jury on the alternative theory of battery (or caused bodily harm to the officer) when the defendant was not charged with that form of battery. See <u>Hendricks v. State</u>, 744 So.2d 542 (Fla. 1st DCA 1999).[6]  Petitioner was entitled to have the jury instructed on the offense with which he was charged, specifically battery upon Officer Weeks by intentionally touching or striking Officer Weeks against his will, not uncharged elements of an alternative form of battery.

Thus, assuming that the trial court improperly instructed the jury by including the uncharged verbiage in the jury instructions,

---

[6] The appellate court stated:

> Battery on a law enforcement officer can be committed in two ways. A defendant can commit a battery on a law enforcement officer either by actually and intentionally touching or striking the officer against the officer's will, or by intentionally causing bodily harm to the officer. *See* §§ 784.03(1)(a) & 784.07(2)(b), Fla. Stat. (1997).  In this case, appellant was charged with having committed battery on a law enforcement officer by actually and intentionally touching or striking Officer Hall against Officer Hall's will. Appellant was not charged with having committed battery on a law enforcement officer by intentionally causing bodily harm to Officer Hall; thus, it was error for the trial court to instruct the jury on this alternative.

<u>Hendricks v. State</u>, 744 So.2d 542 (Fla. 1st DCA 1999).

32

defense counsel should have objected.  However, even assuming deficient performance by counsel for failure to object to the trial court's error in instructing the jury on this alternative form of battery, prejudice has not been shown.  Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if defense counsel had objected.

Clearly, at the trial, the evidence centered upon proof that Petitioner had intentionally touched or struck Officer Weeks, not upon Petitioner's intentionally causing bodily harm to Officer Weeks.  First, in opening argument, the prosecutor described the battery scenario that occurred inside the getaway car, stating:

> And Officer Weeks went around to the back of the vehicle to the back seat where this defendant was located.  And now this defendant is trying to get out the other side of the door.  You're going to hear this defendant had literally [sic] was on his rear end and he was scooting, trying to get out the other side of the door.  And to stop him Officer Weeks tried to grab his ankles, tried to grab his legs so he couldn't get out.  And that's when that defendant kicked Officer Weeks directly in his leg.  Officer Weeks backed off for a minute trying to grabbed [sic] his other leg.  When he tried to grab his other leg you're going to hear once again that man deliberately kicked Officer Weeks' hand and it jammed up against the door jam.  And at this time he disengaged and pulled out his pepper spray and he pepper sprayed the defendant to try and incapacitate him.  But that didn't s[t]op him because you're going to hear when he pepper sprayed him he just kept flailing.

33

> Officer Weeks once again tried to grab
> his leg to get him out of the back of the
> vehicle.  This time, each and every time the
> defendant was kicking at him he used his baton
> to block the blows.  And after he used his
> baton and saw that wasn't working, back up was
> on the way and he just physically entered into
> the vehicle and restrained this man until the
> back up arrived about a minute later.
>
> But that's not all you're going to hear.
> Because you're going to hear that after he was
> arrested, when this defendant was arrested
> during the investigation when he was asked why
> in the world did you do this, he was very
> honest, I didn't want to go to jail.
>
> . . . .
>
> And that he is guilty of battery on [a]
> law enforcement officer for at least two
> deliberate kicks to Officer Weeks when Officer
> Weeks was trying to detain him.

Tr. at 17-19, 20.  And, in closing argument, the prosecutor

summarized the evidence with respect to the battery upon Officer

Weeks:

> [The] [j]udge is going to read you [that] the
> State had to prove four elements, first, that
> Tomy Lee Bryd intentionally struck or touched
> Joel Weeks against his will or caused bodily
> harm to Joel Weeks.  Well[,] I've already
> argued and I'm not going to argue anymore and
> you've heard the evidence of his intent and
> how he did in fact touch and intentionally
> struck Joel Weeks against his will.

Id. at 189.  The State, in its presentation of the evidence, relied

solely upon the fact of Petitioner's deliberate kicks upon Officer

Weeks for the battery conviction.

In defense counsel's opening argument, just before Petitioner's testimony, he stated:

> Now turning for a moment to battery on
> [a] law enforcement officer. The State
> alleges the evidence shows that the defendant
> Tommy Byrd intentionally struck a police
> officer. The word intent, the evidence must
> show that Tommy wanted to strike the police
> officer, not an accident, but he wanted to hit
> that police officer. This is not accidental,
> this is a purposeful intent, an ability on
> behalf of the defendant to strike that
> officer. And I suggest this is a hard burden
> to prove.
>
> . . . .
>
> As a result the evidence will not show
> such intention on behalf of the defendant.
>
> As you will hear from the defendant he
> was there, he knows what he was thinking. And
> the defendant will state what his intention
> was on the day in question.
>
> The evidence has shown that Tommy was
> trying to get away from the police officer.
> There is no question about that.
>
> The evidence also shows that a police
> officer pointed his weapon toward the car
> which Tommy was in. Furthermore, the evidence
> shows that the officer jumped into the vehicle
> that Tommy was in. Accidental touching, yes,
> physical contact, yes, but there was no
> intention as the evidence will show.

Id. at 145-46. Thus, defense counsel prepared the jury for evidence by Petitioner that there was no intentional striking of Officer Weeks by Petitioner.

The evidence at trial was as follows. Officer Dobbins, the security officer at Wal-Mart, testified that she saw Petitioner

kicking Officer Weeks.  <u>Id</u>. at 40, 69, 72, 91.  Officer Dobbins
confirmed that no one involved that night received any medical
attention, except Petitioner who had been pepper sprayed.  <u>Id</u>. at
93-94.

Officer Weeks testified that, as he tried to pull him out of
the back seat of the getaway car, Petitioner Bryd kicked him.  <u>Id</u>.
at 101.  The first kick was on the inside of Officer Weeks' left
thigh.  <u>Id</u>. at 102.  Then, Petitioner kicked Officer Weeks' left
hand.  <u>Id</u>.  After being kicked twice, Officer Weeks "stepped back"
from the vehicle's back seat area and told Petitioner to exit the
vehicle.  <u>Id</u>.  When Petitioner did not comply, Officer Weeks pepper
sprayed him; however, there was not "much effect with the pepper
spray."  <u>Id</u>.  Petitioner attempted to kick Officer Weeks again, but
Officer Weeks "struck him in the tibia of [the] nerve behind his
calf at least twice" with his baton.  <u>Id</u>. at 103.

> We were really at a stalemate, I'm not
> sure if he made any more efforts to kick me
> after that but I wasn't going to just stand
> there and keep hitting somebody in the leg, it
> was a stalemate, so I had to just put the
> stick down and jump in the car on top of him.
>
>         . . . .
>
> Actually I had just held him, I was able
> to get one of his arms secured. I wasn't able
> to handcuff him.  I held him until back-up
> officer[s] arrived and they opened the door
> and they actually handcuffed him.

<u>Id</u>. at 103, 104.  Officer Weeks stated that he was not permanently
injured: "[j]ust bruises and knots, they went away."  <u>Id</u>. at 105.

36

An ambulance was called for Petitioner to "flush his eyes out" from the pepper spray. Id. at 106. On cross-examination, Officer Weeks stated that at least two of the kicks "were very deliberate and very well planned." Id. at 111, 112.

The jury also heard Petitioner's testimony. Petitioner Byrd explained that Officer Weeks was "real aggressive" and reached into the back seat of the car to try to pull him out, "but he couldn't pull me because I had the head rest of the passenger side of the front seat holding." Id. at 159. Petitioner explained that he ran away from Officer Weeks in the parking lot, but did not fight with Officer Weeks in the back seat of the getaway car. Id. at 167.

Thus, the State charged Petitioner with one form of battery (that Petitioner intentionally struck or touched Officer Weeks against his will) and sought to prove the battery solely on evidence that Petitioner intentionally struck or touched Officer Weeks. The State specifically presented evidence of at least two deliberate kicks. The State did not attempt to convince the jury that Petitioner caused bodily harm. Officer Weeks described and focused on the deliberate kicks, and Petitioner denied intentionally kicking Officer Weeks.

Further, the prosecutor argued to the jury that it was intentional kicking, and defense counsel argued it was not intentional. Thus, in reaching the verdict, the jury found Petitioner Byrd guilty of battery upon Officer Weeks, as charged in

37

the Information (intentionally striking or touching).   Ex. A at 59.[7]   Thus, Petitioner's ineffectiveness claim must fail since there is no resulting prejudice.   This Court is confident that the jury's verdict on count two (battery on a law enforcement officer) was based on the charged offense and on the elements on which the State actually presented evidence (deliberate kicking by Petitioner), on which the State based its arguments and on which the Petitioner contested at trial.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** in chambers in Jacksonville, Florida, this 9th day of May, 2008.

Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

---

[7] The Verdict for count two states: "We, the jury, find the Defendant guilty of battery on a law enforcement officer, as charged in the Information."   Ex. A at 59, Verdict - Count II.

38

```
sc 4/29
c:
Tomy Lee Byrd
Ass't Attorney General (Edwards)
```